In the Matter of the Claim of BELLE SWILLING to Compel NORMAN L. MARKS, Executor, etc., of IDA ASHNER, Deceased, to Pay the Claim of BELLE SWILLING.

BELLE SWILLING, Petitioner, Respondent; NORMAN L. MARKS, Executor, etc., of IDA ASHNER, Deceased, Appellant.

First Department, January 15, 1937.

Max Shlivek of counsel [Julius Appelman with him on the brief], for the appellant.

Irving Schneider of counsel, for the respondent.

UNTERMYER, J. This proceeding was instituted to compel the executor, who is also the trustee under the will of the deceased, to pay the petitioner the sum of $5,000 under paragraph seventeenth of the will, which provides: " I give and bequeath to my Trustee hereinafter named the sum of Five Thousand ($5,000) Dollars to pay over the same in his sole discretion, to my nurse, Belle Swilling. My Trustee knows my thoughts concerning this conditional bequest and the power shall rest with him completely and absolutely to determine whether or not the money, or any part thereof, shall be turned over to her. In the event that my Trustee shall determine not to turn over the money to her, this legacy shall lapse and the principal sum and all accrued interest shall be paid to my residuary legatees with the same force and effect as if this bequest were made directly to them and their names fully set forth herein."

The executor's answer asserted that he had exercised his judgment in accordance with the discretion vested in him against payment of the legacy. Thereupon the surrogate denied the application. Subsequently, however, the surrogate granted a reargument made upon the ground that the executor had in fact exercised his discretion in favor of the petitioner by approving payment of the legacy and that he could not thereafter alter the rights of the legatee. Thereupon the issues were tried.

The evidence disclosed that previous to 1929 the petitioner was employed as a trained nurse by the deceased, against whose son, in August, 1929, she brought an action for breach of promise of marriage. The son died the following month. The will was executed in May, 1930. The executor testified that at the time of the execution of the will the testatrix did not know of the action for breach of promise instituted by the petitioner and that the provision giving him discretion to withhold the legacy was inserted, as were other provisions in the will, to be exercised if unusual circumstances should arise. He further testified that in 1931 the testatrix learned for the first time from other sources, of the petitioner's action against her son, but that it was deemed inexpedient to cause a codicil canceling the legacy to be executed at that time on account of the condition of her health. He testified further that he had consistently refused to pay the legacy on

account of the anguish caused to the deceased by the petitioner and also because the value of the estate had so declined that a settlement, excluding payment of any part of the legacy to the petitioner, had become necessary with others interested in the estate.

The executor's testimony was contradicted in many particulars by the petitioner's attorney, whom the surrogate believed and whose testimony, for the purposes of this appeal, will be assumed to be true. According to his testimony, after the death of the testatrix he arranged an appointment with the executor, with whom he had been acquainted for many years, to discuss the question of the legacy. He testified that in the course of the conversation the executor referred to the breach of promise action in apparent explanation of his reluctance to pay the legacy, but finally said, " Well, I think I will make this payment to do a friend a favor." The petitioner offered no proof tending to establish that the executor's subsequent refusal to approve payment of the legacy was merely capricious or animated by any improper motive and the surrogate did not so find. Nor, in our opinion, could such a conclusion be sustained in view of the comprehensive language of the will, the petitioner's previous action for breach of promise and the decline in the value of the estate rendering necessary a settlement with other parties interested in the estate. In directing payment of the legacy the surrogate relied entirely upon the circumstance that in conversation with the petitioner's attorney the executor had made a final determination to pay the legacy.

The appellant contends that such a determination, though communicated to the petitioner, would be revocable by the executor and that nothing short of actual payment would bind the estate. He maintains that until payment the power remained to reconsider the circumstances and change the determination either by payment of a legacy of which the executor had previously disapproved or by rejecting a legacy which he had agreed to pay. (Compare *Ames* v. *Scudder*, 11 Mo. App. 168; affd., 83 Mo. 189.) It is not necessary, however, to decide that question, for, if anything short of actual payment will suffice, it can only be a determination which is definite and unequivocal. In the present case the determination relied on by the petitioner does not satisfy that requirement, but amounted merely to the statement of an intention or probability. The executor's declaration, " Well, *I think* I will make this payment to do a friend a favor," is not the statement of an irrevocable determination, but, on the contrary, is suggestive of doubt in the executor's mind coupled with a belief that the doubt will be resolved in favor of the legatee. It was merely the expression of an uncertain

intent subject to the possibility that the executor might " think " differently at a later time. Whether we accept this version of the executor's statement or the similar expressions attributed to him by the petitioner's attorney, " Yes, yes, *I think* I will make this payment. Why shouldn't I do a friend a favor? " the result is the same. There was no definite and irrevocable determination by the executor that the legacy should be paid.

All this is said without suggesting that a final determination to pay a legacy stated to be influenced entirely by considerations of friendship for the attorney for the legatee would be enforcible against the estate.

The decree should be reversed, with costs to the appellant, payable out of the estate, and the application denied, and the matter remitted to the surrogate of the county of New York for further action in accordance with this opinion.

MARTIN, P. J., MCAVOY, O'MALLEY and COHN, JJ., concur.

Decree unanimously reversed, with costs to the appellant payable out of the estate, and the application denied, and proceeding remitted to the surrogate of the county of New York for further action in accordance with opinion.